IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOSE RICARDO VILLALTA CANALES,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. 1:19-cv-03383-SAG |
| | * | |
| **OFFICER JOSEPH CAW,** *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

************

## MEMORANDUM OPINION

Jose Ricardo Villalta Canales ("Plaintiff") sued Officers Joseph Caw, Lakeram Chhaturam, and Michael Sullivan, as well as the Maryland Department of Natural Resources, the Maryland Department of Natural Resources Police, and the State of Maryland (collectively, "Defendants"), alleging that he was the victim of an unlawful seizure and arrest. ECF 1. Presently pending is Plaintiff's Motion for U Visa Certification, ECF 50. Defendants have responded to the Motion, ECF 54, and Plaintiff has replied, ECF 55. After review of those filings, no hearing is necessary. *See* Loc. R. 105.8 (D. Md. 2021). For the reasons that follow, Plaintiff's Motion is Denied.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On August 27, 2019, Plaintiff was detained by three Department of Natural Resources police officers while he assisted a relative with cutting down a tree without the required tree expert license. Following this incident, Plaintiff filed a Complaint on November 25, 2019, alleging (among other harms) violations of his constitutional rights for unlawful search and seizure, proscribed by the Fourth Amendment. ECF 1. While he did not dispute his lack of a license, he asserted that the officers subsequently and improperly detained him while they investigated whether he violated civil immigration laws. *Id.*

1

Defendants moved to dismiss Plaintiff's Complaint, but the Court denied that motion on April 3, 2020.  ECF 35, 36.  In doing so, the Court explained that, "[a]bsent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law."  ECF 35 at 11 (quoting *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 465 (4th Cir. 2013)).  Though the Court acknowledged that, following discovery, the Officers "may be able to show" that federal officials directed them to detain Plaintiff, ECF 35 at 13, n.2, the Complaint did not allege as much, *id.* at 12.  Thus, accepting the facts as alleged, *id.* at 6, the Complaint survived dismissal.

Following this ruling, the parties entered into settlement discussions.  This Court has been informed that they ultimately agreed to settle the case.  As part of the settlement, Defendants reportedly agreed to implement certain changes in how they handle immigration-related issues that arise in the course of enforcing Maryland's natural resources laws.  ECF 54 at 2.  Defendants also have represented that they agreed to pay Plaintiff a monetary settlement, which was approved by the Maryland Board of Public Works and is currently being implemented.  *Id.*

## II. LEGAL STANDARD

Non-immigrant victims of certain enumerated classes of crimes may apply for a U visa, which grants temporary immigration status for victims of certain crimes who have information that may be helpful in the investigation of those crimes.  8 U.S.C. § 1101(a)(15)(U).  In order to be eligible for a U visa, the alien must show that he or she:

> . . . has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii).

8 U.S.C. § 1101(a)(15)(U)(i)(III).

Clause (iii) of the statute enumerates the types of crimes that support a U visa application by the victim:

> rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; stalking; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; fraud in foreign labor contracting (as defined in section 1351 of Title 18); or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes.

8 U.S.C. § 1101(a)(15)(U)(iii).

The United States Citizenship and Immigration and Services ("USCIS") has sole jurisdiction over U visa petitions, but before an applicant can submit an application to USCIS he must first obtain "a certification from a Federal, State, or local law enforcement official, prosecutor, judge, or other Federal, State, or local authority investigating criminal activity described in § 1101(a)(15)(U)(iii)." 8 U.S.C. § 1184(p)(1). Though federal judges do not investigate or prosecute crimes, the statute explicitly contemplates their issuance of U visa certifications. The certifying authority must confirm that the applicant "'has been helpful, is being helpful, or is likely to be helpful' in the investigation or prosecution of [the] criminal activity." *Id.*

Federal regulations interpreting the U visa statutory regime specify that the statutory term "investigation or prosecution" should be interpreted broadly:

> Investigation or prosecution refers to the detection or investigation of a qualifying crime or criminal activity, as well as to the prosecution, conviction, or sentencing of the perpetrator of the qualifying crime or criminal activity.

8 C.F.R. § 214.14; *see also* 72 Fed.Reg. 53014, 53020 (recognizing that "[j]udges neither investigate crimes nor prosecute perpetrators," such that "the term 'investigation or prosecution' should be interpreted broadly").

Furthermore, the statutory term "helpful" is similarly meant to be construed broadly to include the very early stages of an investigation:

> The requirement was written with several verb tenses, recognizing that an alien may apply for U nonimmigrant status at different stages of the investigation or prosecution. By allowing an individual to petition for U nonimmigrant status upon a showing that he or she may be helpful at some point in the future, USCIS believes that Congress intended for individuals to be eligible for U nonimmigrant status at the very early stages of an investigation.

72 Fed.Reg. 53014, 53019.

A district court's decision whether to issue a U visa certification is discretionary. *See, e.g.*, *Ordonez Orosco v. Napolitano*, 598 F.3d 222, 226-27 (5th Cir. 2010) ("We think the language of § 1184(p) makes it abundantly clear that the decision to issue a [] certification is a discretionary one."); *Trevino v. Benton Cty., Ark.*, 578 F. App'x 626, 627 (8th Cir. 2014) (same).

### III.   ANALYSIS

The central question here is whether Plaintiff's allegations in this civil suit, which have not and will not be assessed on their merits due to a recent settlement between the parties, can validly be construed as being "helpful" to an "investigation or prosecution" when there is no pending investigation or prosecution of the alleged qualifying crimes. Plaintiff suggests that the term "investigation or prosecution" is so broad as to encompass a mere "*prima facie* showing" of a qualifying crime, a showing which he asserts he has made here by virtue of the evidence he has presented of Fourth Amendment violations. ECF 50-1 at 5-8. Defendants, meanwhile, argue that Plaintiff has not provided facts sufficient to establish any criminal violation, nor can he point to any criminal investigation or prosecution. ECF 54 at 4-7. That said, they acknowledge that Plaintiff's civil complaint "has been helpful in revealing deficiencies in how the [Maryland] Natural Resources Police handles certain immigration-related issues" and that the parties' settlement agreement includes provisions that will help address those deficiencies—Defendants

4

urge this Court to only grant certification if it finds that this sort of "helpfulness," removed from any finding of criminality, satisfies the U visa certification statutory criteria. *Id.* at 8-9.

As an initial matter, the parties have not cited, and this Court has not identified, any Fourth Circuit or District of Maryland precedent on point. That said, a number of district courts elsewhere have addressed the question of U visa certification in the context of civil suits divorced from any criminal investigation and have, largely, come to the same conclusion: U visa certification is not appropriate where the court's only role has been to oversee a civil proceeding brought by an applicant and there is no pending investigation or prosecution of the alleged qualifying criminal activity at issue in the civil case. *See Mercado-Guillen v. McAleenan*, No. 18-CV-00727-HSG, 2019 WL 1995331, at *3 (N.D. Cal. May 6, 2019) (compiling cases and concluding that the majority of courts have declined to grant U visa certification in civil proceedings in the absence of a pending investigation or prosecution of the alleged qualifying criminal activity). Just two courts have deviated from this norm, granting U visa certification on the basis of a mere "*prima facie* showing" by civil plaintiffs that they were victims of a qualifying crime, irrespective of the fact that there was no criminal investigation or prosecution ongoing at the time of the certification decision. *See Villegas v. Metro. Gov't of Nashville*, 907 F. Supp. 2d 907, 912 (M.D. Tenn. 2012) (plaintiff made a prima facie showing that she was a victim of a qualifying crime, based on the court's previous findings on summary judgment that defendant's shackling of plaintiff during labor violated her Fourteenth Amendment rights); *Garcia v. Audubon Communities Mgmt., LLC*, No. CIV.A. 08-1291, 2008 WL 1774584, at *2 (E.D. La. Apr. 15, 2008) (plaintiffs made a prima facie showing of involuntary servitude).

*Garcia* and *Villegas* constitute the backbone of Plaintiff's legal argument. He does not, however, attempt to explain why these two cases' "*prima facie* showing" approach should control

5

in light of the significant body of case law cutting in the opposite direction.  Indeed, he fails to distinguish, or even acknowledge, the many other cases undermining his view of the law.  Regardless, the Court ultimately deems the logic underpinning *Garcia* and *Villegas* unpersuasive for reasons already explored by many previous courts examining this same issue.  The court in *Agaton v. Hosp. & Catering Servs., Inc.*, for one, explained in detail why U visa certification would be inappropriate in the absence of any nexus between a civil dispute and a criminal investigation or prosecution.  No. CIV.A. 11-1716, 2013 WL 1282454, at *4 (W.D. La. Mar. 28, 2013).  The *Agaton* plaintiffs, who had sued their employer for purported violations of the Fair Labor Standards Act, urged the district judge to grant U visa certification because they were helpful in the investigation of the defendant-employer's alleged criminal wage and labor activities.  *Id.* at *1.  The *Agaton* court disagreed, interpreting the U visa regulations to "not allow certification by a federal judge when that judge has no responsibilities regarding any pending investigation or prosecution of the qualifying crime."  *Id.* at *4.  While the court noted that the terms "helpful" and "investigation and prosecution" were undoubtedly meant to be interpreted broadly, it went on to conclude that the regulations nevertheless "still contemplate that *some* investigation or prosecution must have begun before certification."  *Id.* (emphasis added).  "[T]o read the regulations so broadly as to allow certification by a judge when that judge has no connection to any criminal prosecution or investigation involving the victims does violence to the rest of the regulatory language," which, on the *Agaton* court's reading, require a certifying judge to have at least some involvement in an ongoing investigation or prosecution of qualifying criminal activity.  *Id.*

      The above rationale applies with equal, if not greater, force to the case at hand.  Here, Plaintiff has proffered no evidence of a past or presently pending investigation into the conduct of the Natural Resources Police here—instead, he speculatively refers only to "any future

investigation or prosecution of these activities," evincing his inability to tie this suit to any concrete action.  ECF 50-1 at 10.  While he asserts that his suit has provided "the foundational factual understanding to 'detect' and determine whether criminal activity took place," *id.*, nothing he has provided the Court suggests that any relevant authorities have taken, or will take, action based on this purported "detection."  It is true that the U visa statutory scheme refers to future assistance with a prosecution or investigation, but the future tense is used to refer to the assistance alone ("is likely to be helpful") not the investigation.  8 U.S.C. § 1101(a)(15)(U)(i)(III).  Put simply, nothing in the statute or regulations suggest that it was meant to encompass pure conjecture regarding a hypothetical future investigation.  Indeed, the regulatory guidance contemplates an outer bound of U visa certification at "the very early stages of an investigation," 72 Fed.Reg. 53019, not the period during which there is no investigation, or even a hint of one, at all.  *See Herrera Lopez v. Walker*, No. 3:18-CV-170, 2019 WL 937311, at *2 (E.D. Tenn. Feb. 26, 2019) (requiring some "indication in the record that such an investigation or prosecution is ongoing."); *Baiju v. U.S. Dep't of Lab.*, No. 12-CV-5610 KAM, 2014 WL 349295, at *20 (E.D.N.Y. Jan. 31, 2014) (denying certification when "there is no evidence of any possible pending investigation or prosecution of the qualifying crimes that petitioner alleges").  To hold that U visa certification is appropriate here would not simply be to read "investigation or prosecution" broadly, but rather to read it out of the statute all together.

Plaintiff, seeking to both overcome this investigation requirement and to provide the Court a way to satisfy Defendants' concerns over criminal fact finding, repeatedly emphasizes that USCIS has concluded that mere "detection" of a qualifying crime or criminal activity is all that is required for U visa certification.  *See* ECF 50-1 at 10; ECF 55 at 1.  However, even if the Court concluded that USCIS's regulatory "detection" language somehow obviated the clear statutory

requirement that there exist an "investigation or prosecution" of the allegedly criminal conduct, no "detection" can be deemed to have occurred here. The USCIS guidance explicitly requires the "detection" to be "of a qualifying crime or criminal activity," 8 C.F.R. § 214.14, and there has been no judicial assessment in this case of whether Defendants' conduct in fact constituted a qualifying crime or criminal activity. While the Court did deny Defendants' Motion to Dismiss, ECF 35, that opinion involved an assessment of the viability of Plaintiff's pleadings rather than a judgment on the merits. Similarly, the mere fact of settlement, and Defendants' acknowledgement of certain "deficiencies" in its immigration-related procedures, is a far cry from an admission of criminal wrongdoing sufficient to support Plaintiff's assertion that he has made a prima facie showing of criminal misconduct.

The view that mere plausible allegations constitute "detection," ECF 50-1 at 5-6, would impermissibly broaden the scope of U visa certification to include virtually any civil suit where a plaintiff claims to be the victim of a qualifying criminal violation, irrespective of the merits of or the evidence supporting that claim. To avoid such precedent, and because Plaintiff has not demonstrated the existence of an investigation or prosecution, this Court will decline to certify a U visa in this case.

**IV. CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for U Visa Certification, ECF 50, is DENIED. A separate Order is filed herewith.

Dated: August 4, 2021

/s/
Stephanie A. Gallagher
United States District Judge